# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

**STEPHEN HAECKER,**

     **Petitioner,**

**v.**                                **Case No. 5:17-cv-89-Oc-02PRL**

**SECRETARY, DEPARTMENT OF
CORRECTIONS and FLORIDA
ATTORNEY GENERAL,**

     **Respondents.**

_____/

## ORDER

     Petitioner, a Florida prisoner, instituted this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254.  Dkt. 1.  At the Court's direction, he filed an amended petition (Dkt. 8), which he later supplemented (Dkts. 13, 15).  Respondents responded to Petitioner's petition and filed relevant portions of the state court record.  Dkt. 23.  Petitioner filed a reply in support of his petition.  Dkt. 25.  The Court has reviewed the entire record.  Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted.  *See* Rules Governing Section 2254 Cases in the United States District Courts, Rule 8(a).  Upon

consideration, the Court concludes that the petition is due to be dismissed as untimely.

## I. **BACKGROUND**

### A. State Court Proceedings

In 2011, Petitioner entered a no contest plea to four counts of attempted sexual battery upon a person under 12 years old (Counts I through IV) and one count of lewd or lascivious molestation of a victim less than 12 years of age (Count V). Dkt. 23-1 at 4-6, 8-11.[1] On May 4, 2011, the trial court accepted the plea and sentenced Petitioner to 25 years in prison for Count V and to concurrent terms of lifetime sex offender probation for Counts I through IV. *Id.* at 8-9, 13-32.[2]

On March 14, 2012,[3] Petitioner filed a pro se petition for writ of habeas corpus with the Florida Fifth District Court of Appeal ("Fifth DCA"), asserting that his counsel had been ineffective. *Id.* at 36-37. On April 5, 2012, the Fifth DCA denied the petition. *Id.* at 39.

On May 22, 2012, Petitioner filed a pro se notice of appeal challenging his conviction and sentence. *Id.* at 41. On July 18, 2012, the Fifth DCA dismissed the appeal for lack of jurisdiction because it was untimely. *Id.* at 43-44.

---

[1] Citations to documents filed in this case are to the page numbers assigned when those documents were filed in CM/ECF.

[2] Respondents represent that no transcript exists of the plea/sentencing hearing because Petitioner did not file a timely appeal. Dkt. 23 at 2 n.2.

[3] All filing dates for Petitioner are pursuant to the mailbox rule.

In May 2014, Petitioner filed a pro se motion for postconviction relief in the trial court. *Id.* at 46-57. On May 20, 2014, the trial court dismissed the motion as untimely but gave Petitioner 30 days to file an amended motion. *Id.* at 60-61.

In late June 2014, Petitioner wrote a letter to the trial judge to "plead [mercy] on 1 out of 5 of [his] charges." *Id.* at 63. In that letter, Petitioner stated that he "admitted to doing 4 out of 5" but that he signed the plea thinking that "the molestation charge was taken off [his] [record]." *Id.* The trial court interpreted the letter as a motion to withdraw the plea as to Count V and dismissed the motion with prejudice on July 10, 2014 because it was untimely. *Id.* at 68-69.

On September 3, 2015, Petitioner filed a pro se motion for postconviction DNA testing in the trial court. *Id.* at 71-77. The trial court denied the motion on September 10, 2015. *Id.* at 79-85.

On November 17, 2015, Petitioner filed an amended pro se motion for postconviction DNA testing. *Id.* at 87-95. The trial court construed the motion as a motion for rehearing of its denial of the first motion for DNA testing and a motion for postconviction relief based on the ineffective assistance of counsel. *Id.* at 97-98. On December 2, 2015, the court dismissed the motion, finding it untimely. *Id.*

On November 28, 2016, Petitioner sent another letter (*id.* at 100-03), which the trial court treated as a motion to withdraw plea (*id.* at 107-08). On December 12, 2016, the trial court dismissed the motion as untimely. *Id.* at 107-08.

In early March 2017 (around the same time he filed his federal habeas petition, discussed below), Petitioner filed a petition for writ of habeas corpus with the Florida Supreme Court.[4] *See Haecker v. Jones*, Case No. SC17-401, *available at* http://onlinedocketssc.flcourts.org/DocketResults/CaseDocket?Searchtype=Case+Number&CaseYear=2017&CaseNumber=407 (last visited April 11, 2019).  On March 31, 2017, the Florida Supreme Court dismissed the case because the relief in the petition was not authorized.  *Id.*  The order of dismissal stated, "Any motions or other requests for relief are also denied."  *Id.*  Despite this, on September 15, 2017, Petitioner filed a document titled "Conflict of Interest from the [Court's Ruling] on Friday March 31, 2017 Case Update" with the Florida Supreme Court.  *Id.*

On March 27, 2017, Petitioner filed a pro se document titled "Motion for Post-Conviction Case [Review] And Case Complaint on Law Enforcement Departments" in the state trial court.  Dkt. 23-1 at 110-20.  On April 5, 2017, the trial court dismissed the motion because it was untimely and did not allege any grounds that would qualify as an exception to the time limit.  *Id.* at 122-23.

On September 5, 2017, Petitioner sent another letter to the state trial court judge.  *Id.* at 125-28.  The trial court interpreted the letter as a third motion to withdraw plea and dismissed it as untimely on October 2, 2017.  *Id.* at 130-31.

---

[4] Respondents did not file copies of documents related to this case when they filed the state court record, but Petitioner references the case number in his amended habeas petition.  *See, e.g.*, Dkt. 8 at 2.  The Court may take judicial notice of these state court records.  *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1999) (citations omitted).

B.    Federal Court Proceedings

Petitioner filed a petition for writ of habeas corpus in this Court on March 3, 2017.  Dkt. 1.  On March 13, 2017, this Court ordered Petitioner to file an amended petition.  Dkt. 4.

In April 2017, Petitioner filed his amended petition for writ of habeas corpus in this Court, setting forth 15 grounds for relief.  Dkt. 8.   On August 8, 2017, Petitioner filed a document titled "Official Supp[l]emental Exhibit Motion," which included copies of what Petitioner describes as "CPT[5] Records/Reports" and "Detective Investigation Reports."  Dkt. 13 ("first supplemental filing").  The Court interprets this filing as a supplement to his amended habeas petition.  On September 8, 2017, Petitioner filed  a document titled "Florida Local Rule 3.853 Newly Discovered Information."  Dkt. 15 ("newly-discovered information document").  The Court also interprets this filing as a supplement to Petitioner's amended habeas petition.[6]

Because Petitioner appears to be making a claim of actual innocence, the Court briefly discusses Petitioner's supplemental filings as well as related allegations from his amended habeas petition.  In his first supplemental filing, Petitioner submitted what appear to be reports generated during the investigation of the claims against

_____

[5] Petitioner does not so state, but this appears to be an acronym for "Child Protection Team."

[6] To the extent this document was intended to be a motion for postconviction DNA testing under Florida Rule of Criminal Procedure 3.853, that motion is denied because such a motion should be filed with the state trial court, not this Court.

him.  Those reports show that the victim, J.S.—who was 10 years old at the time—was seen for a forensic interview by a Child Protection Team ("CPT") case coordinator on February 9, 2010.  Dkt. 13 at 3.  The interview resulted in "positive findings of sexual abuse by family friend and roommate, [Petitioner]."  *Id.*  During the interview, J.S. "disclosed multiple incidents of penile-anal penetration with ejaculation, digital-vaginal penetration, cunnilingus, fondling and licking of her breasts, and forced masturbation by [Petitioner]."  *Id.*  She reported that the most recent incident occurred on February 8, 2010.  *Id.*  The writer of the report noted that "[t]here were several noted inconsistencies in [J.S.'s] history, but such inconsistencies are likely due to cognitive issues that may be the result of [J.S.'s] repeat victimization."  *Id.*  On this point, the reports show that J.S.'s "family ha[d] an extensive history with the department with past reports that were closed with verified findings of sexual abuse for both [J.S.] and her sister . . ." and that J.S. had "disclosed a history of sexual abuse by multiple perpetrators including her biological father."  *Id.* at 5.

The reports also show that J.S. was seen for a medical evaluation on February 9, 2010 and that she "provided a positive history of sexual abuse and described the incidents in detail using all five senses."  *Id.* at 3.  The overall findings from the examination were "positive for sexual abuse by history, but with no physical

findings." *Id.* The reports also state, "It is of note that an examination with no findings, in no way, indicates that the sexual abuse did not occur." *Id.*

The reports also show that, later—on February 22, 2010[7]—J.S. told the CPT that there was ongoing child-on-child sex abuse between J.S. and her 12-year-old cousin, J.B. *Id.* at 4-5. When interviewed, J.B. denied the allegations. *Id.* at 4.

According to Petitioner, semen was found on February 22, 2010 (Dkt. 8 at 8) but was never tested (Dkt. 15 at 2). It appears that Petitioner is claiming that, if the semen had been tested, it would have matched to J.B., not Petitioner. Dkt. 8 at 8 ("DNA was not found [until] the child on child case came into play"), 9 ("everyone wishes to listen to a 12 year old boy who done the crim[e]").

In his newly-discovered information document, Petitioner notes that J.S. told the CPT team that her mother told her not to speak of the abuse by J.B. or she could be taken from her mother's care. Dkt. 15 at 2. He also claims that the "truth in the matter" is J.B. "was not only 12 years old at that time [but] also a family member to a Citr[u]s County Government offic[i]al," which explains "why in all records everyone denied that [J.B.] had done [anything] [and] also why the sperm/sem[e]n was never tested." *Id.* He states that "Holly West from the Citr[u]s County [H]ea[l]th Department has stated that 'NO sexual activity' between vict[i]m and

_____

[7] It appears that Petitioner was arrested on February 9, 2010, and that he was incarcerated at the time J.S. made these statements. *See* Dkt. 1 at 2; Dkt. 23-1 at 112.

movant and stated sex[u]al activity did happen between vict[i]m and [J.B.]." *Id.* (internal emphasis omitted). Finally, he notes that this case is "missing the fact of his medical history that makes [him] physical[l]y unable to do the crim[e] as well as movant never lived at vict[i]m's home." *Id.* at 3.[8]

Finally, Petitioner's amended petition includes some assertions that can be read as claims of actual innocence, including the following: (1) "My case was the case that was upon allegations. The child protection team had mix two cases together" (Dkt. 8 at 10); (2) "somehow that semen ended up in Petitioner[']s case as well as it was never tested[;] there was no semen found during the medical examination of the Petitioner[']s case" (*id.* at 14); and (3) "They had let the child on child case close on allegations when that case had positive findings of sexual acts as well as semen being found" (*id.* at 15).

Respondents filed their response to Petitioner's amended habeas petition on April 10, 2018. Dkt. 23. In May 2018, Petitioner filed a document titled "Motion for Formal Hearing," the first sentence of which read, "COMES NOW, Petitioner Stephen Haecker pro se with his reply from the Assistant Attorney General Rebecca R. McGuigan." Dkt. 25. The Court denied the motion to the extent that Petitioner was requesting a formal hearing and appointment of counsel. Dkt. 26. The Court explained that it would consider the arguments set forth in the document as

---

[8] Petitioner claims that his testicles were removed in 2007. Dkt. 8 at 8.

Petitioner's reply in support of his habeas petition. *Id.* Thus, the matter is now ripe for review.

## II.    DISCUSSION

Respondents argue that Petitioner's amended petition should be dismissed because it was untimely under 28 U.S.C. § 2244(d). Dkt. 23.[9] In his reply, Petitioner did not respond directly to this argument. Dkt. 25. However, liberally construing his amended habeas petition, it appears that Petitioner may be claiming entitlement to equitable tolling. Likewise, liberally construing Petitioner's amended petition and the supplements to the amended petition, it appears that Petitioner may be claiming that he is actually innocent, which could excuse his untimely petition. For the reasons stated below, the Court rejects those arguments and finds that Petitioner's amended habeas petition is due to be dismissed as untimely.

### A.    The Petition is Untimely.

First, the Court concludes that Petitioner's amended petition[10] is untimely under § 2244(d)'s statute of limitations.[11] That section provides:

---

[9] Respondents also noted that Petitioner never appealed from his judgment and sentence or the various denials of his motions in state court and stated that he had "failed to exhaust any claims for review." Dkt. 23 at 10. Respondents did not explain whether this failure-to-exhaust and the accompanying procedural default might be excused under governing law. Regardless, the Court need not reach this question because, as discussed *infra*, Petitioner's habeas petition is due to be dismissed as untimely.

[10] For purposes of this Order, the Court assumes that the amended petition relates back to the original petition, which was filed (under the mailbox rule) on March 3, 2017.

[11] Section 2244 is a part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996. Because Petitioner filed his petition after that date, AEDPA and its statute of limitations apply.

(1)     A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—

    (A)     the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B)     the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C)     the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Only subsection (A) is at issue here.[12]  As to that subsection, Petitioner was convicted and sentenced on May 4, 2011.  He did not timely appeal, so the judgment

---

[12] The Court recognizes that Petitioner filed a supplement to this amended petition in which he claimed to have "newly discovered information" (Dkt. 15), which could implicate § 2244(d)(1)(D).  The "new information" in that document is: (1) "This case is also missing the fact of his medical history that makes the movant physical[l]y unable to do the crim[e] as well as movant never lived at vict[i]m[']s home"; (2)  "Holly West from the Citrus County Hea[l]th Department has stated that 'NO sexual activity' between vict[i]m and movant and stated sex[u]al activity did happen between vict[i]m and [J.B.]"; (3) J.B. is a "family member to a Citrus County Government offic[i]al."  *Id.* at 2-3 (original emphasis omitted).  As to the first point, Petitioner has clearly been aware of this information since before his no contest plea.  As to the second point,

and sentence became final 30 days later—on June 3, 2011—when the time for filing

a direct appeal expired.  *Wickboldt v. Jones*, No. 3:16CV217/MCR/CJK, 2017 WL

2060009, at *3 (N.D. Fla. Apr. 13, 2017), *report and recommendation adopted*,

2017 WL 2058208 (N.D. Fla. May 12, 2017) (citations omitted); *see also Salas v.

Pierce*, 297 F. App'x 874, 878 (11th Cir. 2008) (citations omitted).[13]  The statute of

limitations began running the next day, *see San Martin v. McNeil*, 633 F.3d 1257,

1266-67 (11th Cir. 2011) (statute of limitations for federal habeas claim began

running the day after the Supreme Court denied petition for writ of certiorari), and

ran for more than nine months until Petitioner filed his first state habeas petition on

March 14, 2012.  The statute of limitations was then tolled under § 2244(d)(2) until

the Fifth DCA denied the petition on April 5, 2012.  At that point, Petitioner had

less than three months remaining on his federal habeas statute of limitations, and the

deadline to file expired in late June 2012.  Petitioner did not file his federal habeas

petition until March 2017; thus, it was filed more than four years too late.

---

Petitioner has been in possession of reports showing that a medical examination showed no evidence of sexual activity between the victim and Petitioner since at least late June 2014 but did not file his federal habeas petition until March 2017.  *See* Dkt. 23-1 at 63-64 (discussing those reports in a letter filed with the state court in June 2014).  And, as to the third point, Petitioner has not explained when he learned of this information, making it unclear that the information is "newly discovered."  Regardless, as to all three points, to invoke § 2244(d)(1)(D), Petitioner bears the burden of showing that "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence"—that is, he must show "some good reason why he . . . was unable to discover the facts at an earlier date."  *Melson v. Allen*, 548 F.3d 993, 999 (11th Cir. 2008) (internal quotation and citation omitted), *judgment vacated on other grounds*, 561 U.S. 1001 (2010).  Petitioner has made no such showing.

[13] In this Order, unpublished decisions of the Eleventh Circuit are cited as persuasive authority.

Notably, Petitioner's untimely notice of direct appeal—filed on May 22, 2012—did not toll the statute of limitations because it was not "properly filed" under § 2244(d)(2). *Smith v. Sec'y, Fla. Dep't of Corr.*, No. 3:17-CV-113-J-32JBT, 2018 WL 6724762, at *3 (M.D. Fla. Dec. 21, 2018) (citations omitted).[14] Likewise, none of his other state court filings—all of which came after June 2012—could toll the statute of limitations because it had already expired when those filings were made. *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000). Thus, the Court concludes that Petitioner's federal habeas petition was not timely filed under § 2244.

B.  Equitable Tolling Is Not Warranted.

Petitioner's amended petition and supplements, however, can be liberally construed to invoke equitable tolling. Specifically, the form for filing a federal petition for writ of habeas corpus asks a petitioner to explain why the one-year statute of limitations in § 2244(d) does not bar the petition if the petitioner's judgment of conviction became final over a year ago. In response to that prompt, Petitioner wrote the following in his amended petition:

> Petitioner was under the impression that counsel was doing the appeal as well as at that time Petitioner was v[e]ry sick within the time zone

---

[14] Even if it did toll the statute of limitations, more than a month-and-a-half elapsed between the Fifth DCA's denial of Petitioner's state habeas petition on April 5, 2012 and the filing of the untimely notice of appeal on May 22, 2012—leaving Petitioner with less than two months on his federal habeas statute of limitations. The statute of limitations would have begun to run again after the Fifth DCA dismissed his direct appeal as untimely on July 18, 2012 and would have expired, at the latest, in September 2012—more than four years before Petitioner filed his federal habeas petition.

and has been working on this case [non] stop for the last 5 years when he found out that he was working alone on this case.

Dkt. 8 at 13. Elsewhere in the amended petition, Petitioner states that he "suffers from a violent seizure [d]isorder which causes at times continuous seizures [leaving] Petitioner unable to concentrate on matters for more than a few minutes a time." *Id.* at 15.[15]

A habeas petitioner is "entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation and citation omitted). The petitioner bears the burden of proving circumstances that justify the application of equitable tolling. *Lugo*, 750 F.3d at 1209 (citation omitted). A petitioner "must plead or proffer enough facts that, if true, would justify an evidentiary hearing on the issue." *Id.* (internal quotation and citation omitted). "[T]he allegations supporting equitable tolling must be specific and not conclusory." *Id.* (citation omitted). "Because

---

[15] Given that Petitioner bears the burden of proving circumstances warranting equitable tolling, the Court is "not 'required to mine the record, prospecting for facts that the habeas petitioner overlooked and could have, but did not, bring to the surface.'" *Lugo v. Sec'y Fla. Dep't of Corr.*, 750 F.3d 1198, 1209 (11th Cir. 2014) (quoting *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011)). Nonetheless, the Court notes that Petitioner's original petition also claimed that he "has no clue about law work," "[i]nmates . . . [misled] Petitioner," and "DOC[']s law lib[r]ary is limited on research materials and time per inmate." Dkt. 1 at 2, 10. None of these reasons are sufficient to warrant equitable tolling. *See Perez v. Florida*, 519 F. App'x 995, 997 (11th Cir. 2013) (per curiam) (citation omitted) (lack of legal education and related confusion or ignorance about the law); *Miles v. Sec'y, DOC*, No. 3:13-cv-759-J-39MCR, 2015 WL 6892164, at *4 (M.D. Fla. Oct. 29, 2015) (citations omitted) (poor advice from inmate law clerk and limited law library access).

equitable tolling is an extraordinary remedy, it is limited to rare and exceptional circumstances and typically applied sparingly." *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) (internal quotation and citation omitted).

Here, Petitioner has not shown that he is entitled to the extraordinary remedy of equitable tolling. First, he has not shown that an extraordinary circumstance prevented timely filing. The fact that Petitioner ultimately had to "work alone" on the case is not an extraordinary circumstance warranting equitable tolling. *Rich v. Dep't of Corr. State of Fla.*, 317 F. App'x 881, 883 (11th Cir. 2008) (citation omitted) (pro se status does not warrant equitable tolling). Petitioner's claim that he was "under the impression that counsel was doing the appeal" is also conclusory. He does not explain why he believed counsel was filing an appeal for him, what steps he took to contact his attorney when it appeared that an appeal was not being pursued, or when his incorrect "impression" was corrected. *See Sharma v. United States*, No. 6:12-cv-1081-Orl-19DAB, 2013 WL 12334829, at *4 (M.D. Fla. July 12, 2013) (rejecting claim of equitable tolling in § 2255 case where petitioner made conclusory claims that she was under the "impression" that her attorney would handle her direct appeal and habeas proceeding but did not indicate how she came by this impression or when it was corrected and gave no details about her attempts

to contact him).[16] Moreover, this claim does not show that Petitioner was prevented from timely filing his federal habeas petition—as opposed to his direct appeal in state court. *See Lucas v. United States*, 522 F. App'x 556, 559 (11th Cir. 2013) (concluding, in the context of a § 2255 petition, that equitable tolling was not proper because petitioner had "not shown that an extraordinary circumstance prevented him from timely exercising his right to file a § 2255 motion, as opposed to his right to file a direct appeal").

Likewise, Petitioner's conclusory claims that he was "very sick" do not establish an extraordinary circumstance warranting equitable tolling. The only illness mentioned in the record is Petitioner's claim that he has a seizure disorder that "at times" causes "continuous seizures [leaving] [him] unable to concentrate on matters for more than a few minutes at a time." Dkt. 8 at 15. But "mental impairment is not *per se* a reason to toll a statute of limitations." *Hunter*, 587 F.3d at 1308 (citation omitted). Rather, the alleged impairment must have affected Petitioner's ability to file a timely habeas petition before tolling is warranted. *Id.* The standard is rigorous: "To be entitled to equitable tolling on the basis of mental

___

[16] It is not clear if Petitioner is attempting to blame his attorney for failing to file a timely appeal, but—to the extent he is—his conclusory statement falls far short of meeting the high standard required to invoke equitable tolling based on an attorney's conduct. *See Cadet v. Fla. Dep't of Corr.*, 853 F.3d 1216, 1227 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 1042 (2018) (original emphasis omitted) ("[A]ttorney negligence, even gross or egregious negligence, does not by itself qualify as an 'extraordinary circumstance' for purposes of equitable tolling; either abandonment of the attorney-client relationship . . . or some other professional misconduct or some other extraordinary circumstance is required").

illness, a petitioner must show more than that it is difficult for him to understand and act upon his legal rights; rather, he must show that he was incapable of preparing and filing a federal habeas petition . . . any earlier than he did." *Hay v. Sec'y, DOC*, No. 3:15-cv-619-J-39PDB, 2017 WL 3387385, at *4 (M.D. Fla. Aug. 7, 2017) (internal quotation and citation omitted).

While Petitioner's allegation that he is sometimes "unable to concentrate on matters for more than a few minutes at a time" might  indicate the presence of a condition that could warrant equitable tolling for some period of time, *see Hunter*, 587 F.3d at 1308-09 (petitioner entitled to hearing on equitable tolling where, among other things, he presented evidence that he had trouble communicating and was incapable of managing his own affairs), Petitioner has not explained how often (if at all) his seizure disorder affected him prior to the running of the statute of limitations or how long it rendered him "unable to concentrate on matters for more than a few minutes at a time" during that period.  He certainly has not shown that he was incapacitated for the entirety (or even a portion) of the one-year federal habeas limitations period or the nearly five years that elapsed between the expiration of the statute of limitations and his March 3, 2017 federal habeas petition.  *Compare with id.* (evidence that petitioner had been diagnosed with "chronic, irreversible mental retardation" was probative of his mental limitations during the limitations period and beyond).

To the contrary, the record includes multiple state court filings from Petitioner, both before and after the federal habeas statute of limitations expired. Those filings were clearly written by a layperson and reflect a lack of sophisticated legal knowledge, but they are, for the most part, intelligible and logical. Some of them also include citations to and discussions of statutes and caselaw. *See, e.g.*, Dkt. 23-1 at 71-77, 87-95, 110-20. Petitioner was also ultimately able to file a federal habeas petition and an amended petition.[17] Taken together, this evidence shows that, despite his asserted impairments, Petitioner was generally capable of doing the sort of work necessary to timely file a habeas petition. Thus, he has not shown that his seizure disorder caused him to be unable to file a timely federal habeas petition as required to warrant equitable tolling. *See Fox v. McNeil*, 373 F. App'x 32, 34 (11th Cir. 2010) (refusing equitable tolling in part because petitioner was able to file several pro se motions in state court and ultimately filed a federal habeas petition).

Second, even if the Court were to assume the existence of an extraordinary circumstance that prevented Petitioner from filing a timely federal habeas petition, Petitioner has not demonstrated sufficient diligence in pursuing his federal rights. "The diligence required for equitable tolling purposes is reasonable diligence, not

---

[17] Petitioner has not claimed that his court filings were prepared by inmate law clerks or others, as in *Hunter*, 587 F.3d at 1309.

maximum feasible diligence." *Holland*, 560 U.S. at 653 (internal quotations and citation omitted). Here, Petitioner's only suggestion of diligence is that he "has been working on this case [non] stop for the last 5 years" (Dkt. 8 at 13), which the Court interprets as a reference to his multiple state court filings (most of which were untimely or otherwise improper). Even if the Court were to accept this representation,[18] Petitioner does not explain what, if anything, he did to determine his federal remedies and the time for pursuing them. Thus, he has not established sufficient diligence to warrant equitable tolling. *See Sallie v. Chatman*, 34 F. Supp. 3d 1272, 1298 (M.D. Ga. 2014) (finding no diligence for purposes of equitable tolling where petitioner presented insufficient evidence that he attempted to research the statute of limitations period; attempted to draft his own petition; tried to obtain standard habeas corpus forms; or made any attempt to file a timely pro se federal habeas petition); *see also Minor v. Chapdelaine*, 678 F. App'x 695, 697 (10th Cir. 2017) (concluding that state court motion for postconviction relief that was timely under state law but filed after the federal habeas deadline expired did not support claim of diligence for purposes of equitable tolling because "we do not believe Appellant's alleged diligence in state court could or should cure his lack of diligence in federal court even for the purposes of equitable tolling"); *Howell v. Crosby*, 415

---

[18] The Court notes that Petitioner's claim that he worked on his case "non stop" for five years undercuts any claim he makes that his seizure disorder prevented him from doing the work necessary to file a timely federal habeas petition.

F.3d 1250, 1252 (11th Cir. 2005) (declining request for equitable tolling in part because petitioner could not "establish his own diligence in ascertaining the federal habeas filing deadline").

Moreover, as Respondents argue, the record belies Petitioner's claim that he worked on his case "non stop" for five years. The state court record reveals large gaps—including an almost two-year gap between Petitioner's May 22, 2012 notice of appeal (which was dismissed on July 18, 2012) and his May 2014 motion for postconviction relief, during which time the federal habeas statute of limitations expired. Petitioner has not explained what, if anything, he was doing during those gaps to protect his federal habeas rights. Thus, the Court concludes that Petitioner cannot establish the diligence necessary to warrant equitable tolling.[19]

C.    Actual Innocence

Finally, the Court concludes that Petitioner has not made a sufficient showing of actual innocence[20] to overcome § 2244's statute of limitations. Actual innocence,

---

[19] Petitioner did not explicitly request a hearing on equitable tolling. Regardless, the Court finds that a hearing on equitable tolling is not warranted. The decision whether to hold an evidentiary hearing on equitable tolling is committed to the Court's sound discretion. *Drew v. Dep't of Corr.*, 297 F.3d 1278, 1292 (11th Cir. 2002), *overruling on other grounds recognized by Jones*, 906 F.3d at 1351. While an evidentiary hearing may be necessary where material facts are in dispute, it is not required where no basis exists to believe that further inquiry would help the petitioner prove entitlement to equitable tolling. *Id.*; *San Martin*, 633 F.3d at 1271-72. Here, Petitioner has offered no allegations or supporting evidence suggesting that further inquiry by the Court would help him prove entitlement to equitable tolling.

[20] In this section, the Court will assume that Petitioner is suggesting that he is actually innocent of all the charges of which he was convicted. Nonetheless, the Court notes that, in a state court filing, Petitioner stated that he "admitted to doing 4 out of 5" but that he signed the plea thinking that "the molestation charge was taken off [his] [record]." Dkt. 23-1 at 63. Petitioner's

if proved, allows a court to consider a petitioner's federal habeas petition even if it is time-barred by § 2244. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). The standard for establishing actual innocence is set by *Schlup v. Delo*, 513 U.S. 298 (1995). Under that standard, the petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. To be credible, a claim of actual innocence must be supported with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. A determination of actual innocence is based on an assessment of "the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Id.* at 332.

As best as the Court can tell, Petitioner is claiming that he is actually innocent because: (1) he was physically incapable of committing the crime and did not live with the victim; (2) J.S.'s mother told her not to tell anyone about the abuse by J.B.; (3) everyone took J.B. at his word when he denied abusing J.S. because he is related to a government official; and (4) there was no physical evidence that Petitioner sexually abused J.S., but there was physical evidence that J.B. abused her. It also appears that Petitioner is claiming that investigators mixed up his case with J.B.'s

---

apparent admission that he committed the four counts of attempted sexual battery with which he was charged weighs heavily against any claim that he is actually innocent of those charges.

and incorrectly relied on the presence of semen in his case while closing J.B.'s case as an "allegations only" case. In reality, he claims, it was his case that was the "allegations only" case.

Some of this evidence is not new—such as Petitioner's alleged physical inability to commit the crime and the fact that he allegedly did not live with J.S. And the rest of this evidence does not suggest that Petitioner is actually innocent, which—in this context—means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). This is not a case where the victim alleged that one person abused her but the identity of the perpetrator was unclear. The case reports are clear that J.S. alleged that two separate people— Petitioner and J.B.—sexually abused her. Thus, the fact that semen from J.B. might have been found on February 22, 2010 (or that there was evidence of sexual activity between J.B. and J.S.) does not suggest that Petitioner is factually innocent of sexually abusing J.S. on February 8, 2010 (or any other time). Likewise, the fact that officials in Citrus County might have had a motive to exonerate J.B. of the abuse he allegedly committed does not suggest that Petitioner is actually innocent of the separate acts of abuse of which he was accused. The fact that J.S.'s mother allegedly told her not to talk about the abuse by J.B. also does not suggest that Petitioner is factually innocent of abusing J.S. Moreover, the lack of physical evidence of sexual activity between Petitioner and J.S. does not suggest his actual

innocence of the crimes of which he was convicted—which were attempted sexual battery (Counts I-IV) and lewd or lascivious molestation (Count V). Dkt. 23-1 at 4-5.[21]

Finally, Petitioner's "mix up" theory is unsupported by the record. The case reports he submitted are clear that J.S. accused two people of abusing her—Petitioner and J.B. They are equally clear that there was no physical evidence of sexual activity between Petitioner and J.S. but that "an examination with no findings, in no way, indicates that the sexual abuse did not occur." Dkt. 13 at 3.

Moreover, even if the Court assumed that all of Petitioner's "new" evidence was new and was somehow suggestive of his actual innocence, it would still have to be weighed against the other evidence to determine whether it is more likely that not that no reasonable juror would have convicted him beyond a reasonable doubt in light of all the evidence. The other evidence in this case includes J.S.'s statement that Petitioner sexually abused her. A reasonable juror could have believed J.S.'s allegations, even if there were some inconsistencies in her statements. *Cf. Kuenzel v. Comm'r, Ala. Dep't of Corr.*, 690 F.3d 1311, 1317-18 (11th Cir. 2012) (rejecting claim of actual innocence and noting that a reasonable juror could have believed two witnesses even though they had given inconsistent statements). Thus, the Court

_____

[21] As specified in the charging document, Count V was based on an allegation that Petitioner intentionally touched "in a lewd or lascivious manner the breast(s) or the clothing covering them of [J.S.] . . . or force[d] or entice[d] [J.S.] to so touch" Petitioner. Dkt. 23-1 at 5.

cannot conclude that it is "more likely than not that no reasonable juror would have convicted [Petitioner] in light of the new evidence." Accordingly, Petitioner's claim of actual innocence is not sufficient to overcome the statute of limitations and his habeas petition is due to be dismissed as untimely.[22]

## III. <u>CONCLUSION</u>

For the reasons stated above, the Court finds that Petitioner's amended petition for writ of habeas corpus (Dkt. 8) is untimely and, thus, dismisses the petition with prejudice. The Clerk is instructed to enter judgment accordingly, terminate any pending motions, and close the file.

In addition, a certificate of appealability ("COA") and leave to appeal in forma pauperis are denied. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A [COA] may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a

_____

[22] Petitioner did not explicitly request a hearing on the question of actual innocence. Regardless, the Court concludes that a hearing on the question of actual innocence is not warranted. To be entitled to a hearing to develop the evidence needed to establish actual innocence, Petitioner must make a threshold showing of actual innocence; the Court's confidence in the outcome of the state court proceedings must also be undermined. *Sibley v. Culliver*, 377 F.3d 1196, 1206-07 (11th Cir. 2004) (citations omitted). Here, Petitioner has not made a threshold showing of actual innocence, and the Court's confidence in the outcome of the state court proceedings has not been undermined on the current record. Moreover, it is unlikely that an evidentiary hearing on the allegations Petitioner uses to support his claims of actual innocence would produce the sort of reliable evidence that *Schlup* demands. Thus, a hearing on actual innocence is not warranted.

showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quotation omitted), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation and citation omitted).  Petitioner has not made the requisite showing in these circumstances.  Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

      **DONE AND ORDERED** at Tampa, Florida, on April 22, 2019.


                                           */s/ William F. Jung*               
                                           **WILLIAM F. JUNG**
                                           **UNITED STATES DISTRICT JUDGE**


**COPIES FURNISHED TO:**
Counsel of Record
Petitioner, pro se